# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**SANDRA RENEE DIAZ,**
               **Plaintiff,**

     v.                                                **Case No. 21-CV-810**

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security,**
               **Defendant.**

## DECISION AND ORDER

**1. Background**

Sandra Renee Diaz is back before this court following her sixth hearing with an Administrative Law Judge (ALJ) regarding her application for supplemental security income. The relevant procedural history is set forth in the court's prior decision. *See Diaz v. Saul*, No. 19-CV-872, 2020 U.S. Dist. LEXIS 260984 (E.D. Wis. Aug. 4, 2020). Diaz has been found to be disabled as of June 1, 2016, and therefore at issue here is the period between her alleged onset date of October 10, 2006, and May 31, 2016. (Tr. 1931.)

The court previously remanded this action "[b]ecause the ALJ failed to provide good reasons for discounting the opinions of the consultative examiner regarding Diaz's limitations with respect to work-related stress and interactions with coworkers and

supervisors." *Diaz*, 2020 U.S. Dist. LEXIS 260984, at *20. Diaz argues that the new ALJ, Guila Parker, failed to comply with this court's 2020 order. (ECF No. 22 at 13-26.)

In material part, the ALJ found:

> After careful consideration of the entire record, the undersigned finds that from October 10, 2006 through July 14, 2015, the claimant had the residual functional capacity to perform medium work as defined in 20 CFR 416.967(b). She could not climb ladders, ropes or scaffolds but could occasionally climb stairs. She could not work at unprotected heights or around dangerous moving machinery. She could occasionally balance on uneven terrain, stoop, kneel, crouch or crawl. She needed to avoid concentrated exposure to fumes, dusts, odors, gases or similar pulmonary irritants. She could understand and remember simple instructions consistent with unskilled work. She could maintain concentration, persistence and pace sufficient to carry out simple tasks for two-hour intervals over an 8-hour day with routine breaks. She could work in a low stress job, defined as one that required only occasional work-related decisions and only occasional changes in the work setting, but did not require fast-paced production work. She could occasionally interact with supervisors and co-workers but could not perform tandem tasks that required coordination with co-workers. She could work in proximity to the public and have brief interaction with the public. From July 15, 2015 through May 31, 2016, the claimant's residual functional capacity for exertional tasks decreased from medium work to light work as those exertional limitations are defined in the regulations.

(Tr. 1936.)

**2. Standard of Review**

When the court reviews an ALJ's decision it must assess two questions: did the ALJ apply the correct legal standards and is the ALJ's decision supported by substantial evidence? *See L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019) (citing 42 U.S.C. § 405(g)); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). "The court is not to

'reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner.'" *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)).

"Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017) (quoting *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010)). "Where substantial evidence supports the ALJ's disability determination, [the court] must affirm the [ALJ's] decision even if 'reasonable minds could differ concerning whether [the claimant] is disabled.'" *L.D.R. by Wagner*, 920 F.3d at 1152 (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

### 3. Dr. Manos's Opinion

At issue here, as it was in the court's prior decision, is the opinion of Roland Manos, Ph.D. As the court stated in its prior decision:

> The agency retained Roland Manos, Ph.D., to perform a consultative psychological examination of Diaz in October 2010. (Tr. 921.) Manos's assessment was based on a one-time examination of Diaz, a review of Diaz's records from ProHealth Care, the last of which was dated nearly 15 months prior to his exam, and an interview of Diaz's father. (Tr. 707.) In the section of his report headed "Statement of Work Capacity," Manos stated:
>
>> Ms. Diaz seems capable of understanding and remembering simple instructions; however she may simply lack motivation to carry out simple tasks. Of greater concern is her ability to respond appropriately to supervisors and coworkers. She has been unsuccessful in maintaining employment beyond a few months. She admitted that she does not like to be told what to do. She has left her husband several times and has ended relationships often for no

> reason. She seemed able to maintain concentration. At this time, Ms. Diaz appears to be intolerant of routine stress. She seems to be capable of adapting to changes.

(Tr. 711.)

Manos concluded that Diaz had no limitations in her ability to understand and remember both simple and complex instructions. (Tr. 713.) She had mild to moderate limitations in her ability to make judgments on simple or complex work-related decisions. (Tr. 713.) She had moderate limitations in her ability to carry out simple or complex instructions. (Tr. 713.) She had mild limitations in the ability to interact appropriately with the public and respond appropriately to usual work situations and changes in routine. (Tr. 714.) And she had marked limitations in her ability to interact appropriately with supervisors or coworkers. (Tr. 714.)

*Diaz*, 2020 U.S. Dist. LEXIS 260984, at *6-8.

In the most recent decision, the new ALJ gave Manos's opinions "partial weight." (Tr. 1947.) She then spent roughly the next four pages of her decision explaining her reasons. (Tr. 1947-50.)

"The ALJ must give substantial weight to the medical evidence and opinions submitted, unless specific, legitimate reasons constituting good cause are shown for rejecting it." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995); 20 C.F.R. § 416.927. In assessing a medical source's opinion, the ALJ must consider whether the medical source examined the claimant, whether the claimant had a treating relationship with the medical source, how well the medical source supported his opinion, the consistency of the opinion with other evidence, and the medical source's specialization or expertise. 20 C.F.R. § 416.927(c). The ALJ need not explicitly discuss and weigh each factor but rather need

only "minimally articulate" her reasoning. *Collins v. Berryhill*, 743 F. App'x 21, 25 (7th Cir. 2018) (citing *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008)). Thus, the court applies a "very deferential" and "lax" standard of review to the weight an ALJ gave to a medical source. *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008) (quoting *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008)).

### 3.1. Stress Tolerance

The court's prior decision to remand was based, in part, on the fact that two reasons the ALJ gave for discounting Manos's opinion regarding Diaz's ability to handle stress were not supported by the evidence that the ALJ cited. *Diaz*, 2020 U.S. Dist. LEXIS 260984, at *11. The evidence cited by the ALJ established only that Diaz's symptoms had improved. Improvement alone did not mean Diaz's symptoms were not as severe as Manos found. *Id.* at *12 (citing *Ivy-Covington v. Saul*, No. 19-CV-213, 2020 U.S. Dist. LEXIS 39844, at *11 (E.D. Wis. Mar. 9, 2020)).

Additionally, the court noted that the mental status examinations that the ALJ relied on were not from mental health providers but appeared to be rote findings offered in conjunction with care for unrelated impairments. As Diaz acknowledges (ECF No. 22 at 15), the court found that those findings were relevant but their value "minimal." *Diaz*, 2020 U.S. Dist. LEXIS 260984, at *13. Moreover, the findings were unrelated to Diaz's stress tolerance. *Id.* Therefore, the ALJ failed to point to "compelling evidence" for rejecting Manos's opinion. *Id.* at *13-*14.

The court did not require the new ALJ to accept Manos's opinion on remand. Nor did the court find it was error for the previous ALJ to rely on the evidence that he did. The court held only that the cited evidence was insufficient to sustain the ALJ's conclusion. Thus, if the ALJ on remand reached the same conclusion as to the weight to be afforded Manos's opinion, she needed to do a better job supporting and explaining that conclusion.

The ALJ on remand did reach the same conclusion, and in support she pointed to the same reasons that the court previously found insufficient. But the ALJ went further, both offering a more detailed explanation than had the prior ALJ and pointing to additional evidence. Although the ALJ, at times, phrased her findings in terms of criticism of this court's prior decision and a defense of the preceding ALJ's decision, the court's concern is only with whether she offered a traceable rationale that was sufficient to sustain her conclusion. The question before the court is whether that evidence, as bolstered by the most-recent ALJ, is now sufficient to sustain the same conclusion.

The ALJ accepted Manos's opinions regarding Diaz's ability to understand, remember, and carry-out instructions and make judgments on work-related decisions. (Tr. 1947.) As for Manos's opinion that Diaz would be unable to tolerate routine work stress, the ALJ found that opinion inconsistent with Diaz's "improvement with medication, her generally good mental status examinations, and the absence of more intensive and highly structured mental health care (EX. 2F/33; EX. 7F/4; EX. 12F/21, 32,

36, 38; EX. 14F/31; EX. 19F-23, 35; EX. 25F/25, 60, 66, 73, 77; EX. 27F/5, 15, 19)." (Tr. 1947.) She further referred to the fact that Diaz "exhibited no ongoing abnormalities of dress or grooming, exhibited appropriate judgment and insight, exhibited cooperative behavior, and exhibited improvement with medication." (Tr. 1947.) Moreover, Diaz "had not required or pursued psychiatric hospitalization or similarly highly structured or intensive care" and "her symptoms dramatically improved with medication compliance, and treatment notes confirmed she was alert, oriented and pleasant, with normal speech, 'okay' mood, pleasant, stable and full range of affect, linear and goal-directed thought process, no psychosis, intact cognition, insight and judgment, and acceptable sleep and appetite." Diaz "experienced only very, very faint minimal auditory hallucinations when under extreme stress and even such symptoms were not bothersome, receded quickly and were not really audible." (Tr. 1948 (emphasis and citation omitted).) "[E]ven when the claimant experienced an increase in symptoms due to increased stress, mental status exams were normal except for a depressed/tearful mood and affect." (Tr. 1948 (emphasis and citation omitted).) Diaz "described symptoms to Dr. Manos, yet contemporaneously told treatment providers her bipolar disorder was well controlled. … [T]hrough summer 2015 and into spring 2016, [Diaz] denied depression or anxiety." (Tr. 1948 (emphasis and citation omitted).) In the ALJ's view, "[a]ll of this contradicts Dr. Manos's conclusion that the claimant was intolerant of routine work stress." (Tr. 1948.)

The ALJ also noted that, although Diaz was upset when she was unable to obtain bariatric surgery, she was able to appeal. (Tr. 1948.) When the appeal failed, she was able to then lose over 100 pounds through diet and exercise. (Tr. 1948.) The ALJ likewise found this evidence inconsistent with Manos's conclusion that Diaz was intolerant of stress. (Tr. 1948.)

Diaz argues that the ALJ erred in relying on her weight loss as a reason for discounting Manos's opinion. She argues, "There is, in fact, almost no evidence in the cited records that exercise played a role in weight loss." (ECF No. 22 at 19.) She also argues that the ALJ overlooked why she lost the weight. Rather than being evidence that she is "a scrappy self-starter," she lost weight because she was following her doctor's advice.

The ALJ did not err in relying on Diaz's weight loss as a factor in discounting Manos's opinion regarding Diaz's stress tolerance. The ALJ reasonably inferred that losing weight, whatever the motivation, is stressful. Arguably, it is even more stressful when, as Diaz argues in her brief, a doctor tells her that losing weight is a matter of life or death. Yet Diaz was able to do it without an apparent exacerbation of her symptoms.

And while it is unclear what significance Diaz attaches to the fact that the ALJ stated that she lost weight in part due to exercise, the fact is that there is evidence that she did exercise. As she acknowledges, she reported walking her dog for 15 to 20 minutes (presumably per day). (Tr. 1672.) In that same record, the practitioner noted that Diaz

8

agreed to add to this slow walk with her dog an additional daily walk of at least 30 to 45 minutes. (Tr. 1672.)

Reading her decision as whole, the ALJ provided the required "good explanation" for the "unusual step" of rejecting the opinion of the agency's own examining physician. *See Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014). The evidence she identified constituted "compelling evidence" for discounting the examining physician's opinion. *See id.*

The ALJ went beyond noting merely that Diaz's symptoms had improved and connected that improvement to a reason for concluding that Diaz was not as intolerant of stress as Manos found. (*Cf.* ECF No. 22 at 22.) The gist of the ALJ's conclusion was that, if Diaz really was as sensitive to stress as Manos believed, there would be more evidence of her symptoms being exacerbated by stress. For example, the ALJ noted that Diaz's hallucinations were connected to stress, and even then she experienced only minor hallucinations when under extreme stress. (Tr. 1948.) When she was stressed, Diaz's mental status examinations were normal aside from appearing depressed and tearful. (Tr. 1948.)

Granted, Diaz was not working at the time, and therefore was not subject to the stresses of fulltime work. But such is the routine nature of disability assessments; an evaluator must look at the evidence of a claimant's functioning when she is not working and speculate as to the claimant's ability while working. That is what Manos did. And

that is what the ALJ did. However, the ALJ found that Manos's conclusion was not well-supported by the evidence and thus discounted his conclusion that Diaz would be intolerant of stress. Because the ALJ's conclusion was supported by substantial evidence and she provided a good explanation for rejecting Manos's opinion, the court finds no error.

Finally, although acknowledging that the ALJ did not address GAF scores in conjunction with Manos's opinion, Diaz nonetheless argues that the ALJ "attach[ed] an untenable amount of importance to these scores" and failed to "explain how GAF Scores—many of them in the 'severe' or 'moderate' range—contradict Dr. Manos's opinion." (ECF No. 22 at 21.) It appears Diaz's argument regarding GAF scores is that, assuming the court otherwise agrees with her arguments, the ALJ's unrelated discussion of GAF scores would be insufficient to sustain her conclusion regarding Manos's opinion.

Having concluded that the ALJ appropriately discounted Manos's opinion regarding Diaz's ability to handle stress, this argument appears moot. The ALJ discussed Diaz's GAF scores only with respect to other opinions (Tr. 1946, 1951-52) that Diaz does not challenge.

### 3.2. Social Functioning

With respect to Diaz's ability to interact with others, Manos stated:

Of greater concern is her ability to respond appropriately to supervisors and coworkers. She has been unsuccessful in maintaining employment beyond a few months. She admitted that she does not like to be told what

to do. She has left her husband several times and has ended relationships often for no reason.

(Tr. 711.) He identified her as having "marked" impairments in her ability to interact with supervisors and coworkers. (Tr. 714.) When asked to identify the "particular medical signs, laboratory findings, or other factors described above[ ] that support your assessment," he stated only that these impairments were the result of her bipolar disorder and borderline personality disorder. (Tr. 714.)

The ALJ afforded "little weight" to this aspect of Manos's opinion. (ECF No. 1948.) She did so, in part, because Manos failed to identify the factors supporting his assessment despite being asked to do so. (Tr. 1948.) The only evidence that Manos identified that might support this conclusion is Diaz's report that she does not like being told what to do and that she said she left her husband several times for no reason. (ECF No. 1948.)

The ALJ further noted that "Manos's conclusions are not consistent with the overall evidence of record, as there is little in the objective treatment records (other than the claimant's subjective complaints) to support prominent or significant social limitations." (Tr. 1948.) She "regularly interacts appropriately with treating and examining providers and demonstrates some ability to engage in activities requiring her to go out into the community and interact well with others." (Tr. 1948-49 (emphasis omitted).) The ALJ supported this conclusion with a lengthy discussion of specific evidence. (Tr. 1949-50.)

Diaz criticizes the ALJ's reliance on her ability to interact appropriately with treatment providers. (ECF No. 22 at 23.) The last time she was before this court, she had criticized the prior ALJ for similar statements. The court in its prior decision rejected Diaz's argument that the ALJ's reliance was improper, stating that it "was an appropriate observation, albeit one that may be only weakly probative." *Diaz*, 2020 U.S. Dist. LEXIS 260984, at *16.

Diaz now seizes on the court's statement that this fact is "only weakly probative" to argue that her cooperativeness at appointments was an insufficient basis for rejecting Manos's opinion regarding her ability to interact with supervisors and coworkers. But Diaz's ability to interact with treatment providers was not the only evidence the ALJ relied on. All the reasons stated above that the ALJ offered for concluding that Manos's opinion was not well-supported likewise provide a basis for discounting Manos's opinion regarding Diaz's ability to interact with others at work.

Nor does the court find persuasive Diaz's argument that the ALJ improperly cherry-picked evidence of her cooperativeness. She argues that there is also much evidence that she was uncooperative, and points to evidence that she frequently missed appointments, failed to take medications, did not control her diabetes, and refused referrals to specialists. (ECF No. 22 at 24.) However, that sort of "uncooperativeness" is quite different than the sort of ability to personally interact with others that Manos and the ALJ were discussing. The evidence Diaz identifies is not inconsistent with the

12
Case 2:21-cv-00810-WED   Filed 08/25/22   Page 12 of 13   Document 39

evidence that Diaz was cooperative in appointments with treatment providers, and thus the ALJ did not err in failing to discuss it.

Finally, Diaz argues that the ALJ impermissibly substituted her conclusion for Manos's medical judgment. (ECF No. 22 at 25.) The ALJ, however, was simply weighing a medical opinion and assessing whether it was consistent with the overall record. Far from impermissibly playing doctor, this is the routine duty of ALJs. *Cf.* 20 C.F.R. § 416.927 (establishing how ALJs must consider medical opinions in cases filed before March 27, 2017).

### 4. Conclusion

The ALJ's decision was consistent with the court's 2020 remand order. She reached the same conclusion as the prior ALJ regarding Manos's opinion but in doing so satisfied her obligation to point to compelling evidence and provide a good explanation for the unusual step of rejecting the opinion of the agency's own examining physician. Accordingly, the court must affirm the final decision of the Commissioner, as set forth in the decision of the ALJ.

**IT IS THEREFORE ORDERED** that the decision of the Commissioner is **affirmed**. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 25th day of August, 2022.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge